Case number 20-41-20 Western Watersheds Project versus Interior Board of Land Appeals. Good morning, your honors. Before you start, Mr. Lucas, I do want to remind Ms. Jaffe and Mr. Boeschel that if they are going to split their time, as we've been told, that they need to keep track of it. We will not do that for you. You do so at your own risk. All right, thank you. Proceed, Mr. Lucas. Thank you, your honors. Laird Lucas for Appellant Western Watersheds Project. The central issue in this case is the scope of the 2014 FLTMA amendments. The district court held that Western Watersheds lacked standing because the original 2008 permits that we challenged, along with the IBLA decision that affirmed those, had expired and were renewed under the terms of the 2014 FLTMA amendments. And the court read those amendments, WWP lacking standing. Counsel, I don't know if anybody else just had a problem, but you were cutting out there. I didn't get that last sentence or so. Sorry about that. The district court held that WWP lacked standing because the under the 2014 amendments. And we think that was erroneous for a couple of reasons. First, it misconstrued the nature of our claims, and I think it misconstrued the factual record, but also it misread the FLTMA amendments. When you look at the 2014 amendments, they're limited. Yes, they require the Secretary of Interior to renew expiring grazing leases on the same terms and conditions, and they provide the Secretary with discretion to decide when to NEPA. It's a temporary suspension of the requirement to do NEPA for new grazing permits and extending the prior ones. In our case, we started challenging the Duck Creek grazing decision back in 2008, went through the administrative law judge process, had a 55-day evidentiary hearing. The ALJ agreed with Western Watersheds Project that the evidence they collected about grazing impacts on the allotment was more accurate and deserved more deference than BLM. And then the IBLA reversed that. We've argued why the IBLA violated its own precedents and acted arbitrarily in that. But by the time we got to the district court, the IBLA decision was issued in 2017. We came into district court in 2019. The 2008 permits had supposedly expired, but their renewal on the regime was in place on the Duck Creek allotment. And by the way, it's not just grazing, it's construction of pipelines, fences, troughs, and other infrastructure. So the IBLA decision adopted a new standard of review of ALJ decisions in grazing appeals that had not existed before. Previously, under IBLA decisions like West Cow Creek permittees, there was a high burden. A party challenging a BLM grazing decision couldn't just poke holes in it. They had to show that BLM actually didn't have correct data or misapplied it or didn't exercise its expertise. And that's what we did. WWP scientists went out and collected data over several years and presented it at the hearing. And the ALJ found for us and the IBLA reversed. But those ongoing, even if the permits were renewed on the same terms, the dispute is not over. Out in the real world, grazing is continuing under those same terms and conditions and under the NEPA document from 2008 that we allege violated NEPA, the EA and the FONSI. Let's address the district courts. Your two preliminary arguments, as I see them here, is your motion to recuse the district court, which you the standing issue. I mean, the district court dismissed this based on what he called standing, correct? Correct. And I guess I'd like for you to address what I think I understand the district court's rationale is, which is basically that that you didn't challenge the the new permit and that even if you are challenging the new permit, you really there's no redressability here because the district court read the amendments of 2014 amendments to basically mean that you don't have any, even if we ultimately or even if the district court ultimately finds in your favor, if we reverse, we say you have standing, there's that you can't. Well, I mean, the whole issue of standing. Sorry. But even if there's just no redressability, because what the district court said, and again, I may not be understanding this correctly, but is that you can't under the new amendments, there's going to be a new review, but basically that the permit stays in effect until that point. And there's nothing else that can happen until under that statute, the secretary completes the EA. And I guess I'd like you to deal with that. And again, I may not be understanding exactly what the district court did here, but. Well, I think you've recounted what the district court did. And our brief argues that it failed to recognize that we're challenging the I.B.L.A. decision from 2017, which is a final agency action subject to judicial review. And the I.B.L.A. speaks with the authority of the secretary of interior and the I.B.L.A. reversed the administrative law judge who said the NEPA was inadequate. Go do it again. At that point, the ALJ also spoke with the secretary's authority. We didn't challenge the renewed permits because cases like Great Old Broads and Western Watersheds out of the District of Arizona held when those permits are renewed under the FLIPMA amendments, you can't challenge them for not having NEPA. We know that. We're challenging the permits that were originally issued and renewed are still in effect. And if there were NEPA violations, then this is common in NEPA cases for the courts to say you didn't consider adequate alternatives or you failed to take a hard look at cumulative impacts. Go remedy that. And that's what we're asking for. The court, the district court did not realize that the nature of the NEPA analysis that will be done under the FLIPMA amendments, the timing, we're not we're not challenging that. But the nature of the NEPA is to ensure that BLM addresses those those defects the next time around. But more than that, what relief could be granted even accepting your argument? Let's accept that 2018 is simply an extension of 2008 and a challenge of 2008 by therefore is equivalent to a challenge of 2018. All the statute allows is it requires a NEPA new evaluation at some point. So unless we're going to rewrite the statute, what could we say? We couldn't say do a NEPA now or we couldn't say it's invalid because of the old one was inadequate because the obligation now is simply to conduct NEPA evaluation sometime during the next 10 years. And that that hasn't violated yet, although there's a tremendous catch 22 or Kafka's quality about this whole thing that troubles me greatly. And I'm troubled more because just by getting delay seems to me that the agency's won and you couldn't protect yourself by saying in the original suit, we're going to sue under a challenging 2008 and any amendment that follows because that the second part of that relief, the court would say is hypothetical and speculative. And so we're not going to recognize that relief. I mean, the whole thing just causes my head to spin. And I agree, Judge Ebel, but the difference here is that we started challenging decisions before the flip amendments were enacted. And by the way, the prior riders had allowed BLM to renew permits without any NEPA review, and they didn't do that. They did NEPA review here. And while the timing of the new NEPA review is subject to the secretary's discretion, the scope of it can be relief provided either by this court or the district court by holding that BLM violated NEPA in the 2008 EA. And secondly, the IBLA decision adopted this new and impossible standard of review of ALJ decisions. That we've argued is arbitrary and capricious under its own standards and the APA. And if this court says that the IBLA improperly reversed the ALJ, then the remedy is to remand for the IBLA to reconsider the ALJ decision. Again, they speak with the authority of the secretary. There's no reach of the secretary's discretion. There is a violation because the 2014 amendments say that the permit, the new permit, it shall be continued until the date on which the secretary concerned completes any environmental analysis. How do we get past that? By recommending... Are you suggesting that that permit is no longer in existence, that the permit would essentially be void if we agree with you? Well, I do think that because we're challenging NEPA done before the 2014 amendments, if you found that the NEPA was invalid, there would be an argument to invalidate the permits. But more importantly... Wouldn't it invalidate the permits? The court has discretion under the APA whether to vacate. There's a lot of different remedial authority. And we suggest that because the IBLA misapplied its own precedents, and in this unusual case, reversed the ALJ, the proper remedy is to remand for the IBLA to apply the correct legal standards to the ALJ. This all happened before the 2014 amendments. We're not the other cases where they challenged renewals for not doing NEPA. We understand the renewals don't require NEPA, but the NEPA has to be done. And when it is done, what will BLM do? That's where the guidance from this court is not an advisory opinion. It's a classic NEPA case of pointing out the defects and remanding. But I do want to emphasize... In the meantime, all of that could happen, and we could remand, and we could say, do the analysis the right way. And in the meantime, the secretary is still sitting on this new permit and hasn't completed, as they have the discretion to do whenever, apparently, a new environmental analysis. And they will have to do it. What happens with that side of the picture? There will be a period of time until the new NEPA is done, but we know that BLM... We've had fundamentals of rangeland health violations. We know that BLM will need to go through a further process to evaluate the grazing, come up with new NEPA, and they shouldn't make the same mistakes as before. But that's where our challenge to the IBLA decision stands separate and apart from the grazing permits. The IBLA erected a new standard of review for these grazing administrative hearings that was something it had never done before, of complete deference that was based on an erroneous legal reading of the Taylor Grazing Act. And this court can give WWP relief by holding that the IBLA violated its own standards of review and the APA in doing that. That IBLA decision is impacting us. But that argument has to be backed up with the argument that the 2018 permit has the same inherent defect as the sin of the father being born by the child as the 2008 permit, because the 2018 permit is a new permit. And it seems to me that what Congress said when it passed the amendments in 2014 was, we know that the EPA, that these agencies are being clogged by all these lawsuits. And we specifically do not want what you're advocating to be the law. I mean, it, I don't know. Well, Your Honor, I would point out there's also the district court relied on the federal defendants assertion without fact that the in 2018 and replaced by new permits, you're making the same assumption, but the motion for judicial notice that federal defendants filed right before their, their response brief before this court, they never did in the district court included these permits. And at least three of them were actually renewed in 2021. We don't understand how the federal defendants can represent that the permits renewed in 2018, when in fact, the permits they filed with this court show they renewed in 2021, at least three of them. What difference does that make? Well, that may mean the 20 2008 permits remained in effect until 2021, including when we filed this case and adjudicated it in front of the district court. So the factual issues here of what has happened to these permits, assumptions being made by the district court about expiration and renewal of the permits appear to not be accurate. And the federal defendants have never explained what has happened with these permits. And it was only on their motion for judicial notice that they finally put the permits in the record. They gave no notice to Western watersheds about this. They're not available on BLM's website. So there's troubling questions here about whether this court and the district court are being accurately informed about the status of the permits. Yet that is what the district court relied on that they were renewed permits in 2018. In saying we lack standing, we don't know that that's factually the case. We think the district court erred by not considering our challenges to the IBLA decision and its improper standard of review, did not consider the relief we could get if that improper standard of review was reversed. Remand to the IBLA to reconsider its decision in light of the correct standards of review would give us relief. That is something that the court did not address. Council, aren't you just trying to, you're trying to convert a standing question into a mootness question, really? No, it's a question of redressability and standing looks at does the plaintiff have a personal interest that is being injured that could be remedied by judicial relief. The IBLA decision has impacted Western watersheds, not only in this case, but in numerous other appeals where it's trying to contest the accuracy of BLM's assertions about grazing and impacts causing their dismissal. We can get meaningful relief from this court or the district court if you hold that the IBLA erred and remand for it to reconsider its decision. You know, my concern in part is my memory in the briefs, and correct me because my memory might be wrong by now, but I think you specifically said in a footnote somewhere that you were not challenging the 2018 renewal. You were challenging, I think you said something that the 2018 was not an issue, you're challenging 2008. And if that, if I'm remembering that correct, then isn't that pretty serious about your rollover argument? No, your honor, because it's not. First, is my memory correct? I mean, did you state to us that you were not challenging the 2018 permit? That is correct. Our complaint did not challenge the 2018 permits because we didn't even know they were there, but they are not new. No, but you said that more than just what your complaint said. I think you said at one point even, I thought you were addressing even the appeal, the appellant issues, that you're not challenging the 2018 when you're challenging 2008. We're challenging the 2008 decision in NEPA analysis and the 2017 IBLA decision. Both. We're challenging both of those and the district court ignored our challenges to the IBLA decision. We don't need to challenge the 2018 permits because they've simply been extended on the same terms and are having the same effect out in the real world. You didn't make that argument and you specifically disclaimed that argument. I mean, I kept waiting for you to say exactly what you said now, but I didn't see you ever making that argument in your briefs. In fact, I saw you disclaiming it when you said we are not challenging 2018, we are challenging 2008. We're challenging 2008 EA and the broader decision by BLM that approved other things than grazing, all the infrastructure. And we're challenging the IBLA decision, which is the final decision of the secretary that upheld those. And it did it for various unlawful reasons, both NEPA and standard of review. And that is what is harming us both in the Duck Creek allotment and more broadly. So the court can order relief if it addresses the IBLA decision and recognizes that the permits have simply been extended on their same terms. You have to read the 2014 amendments narrowly. They don't deprive the court of APA jurisdiction to review permits that were approved before they were extended. They don't deprive the court of authority to review an IBLA decision, which is a final agency action. They simply give BLM more time to do NEPA. When BLM does NEPA... Counselor, your time is up. Thank you, Your Honor. Thank you to the court. Mr. Bushell. Oh, I'm sorry, Ms. Jaffe. I'm going to give three minutes of my time to Utah. And we understand that we need to sort that out. Thanks. May it please the court, Rebecca Jaffe appearing on behalf of the United States. The court should affirm the district court's dismissal for lack of jurisdiction because WWP's harms are not redressable. I have several points that I want to make here. First, we acknowledge that the proceedings before the ALJ and the Interior Board of Land Appeals did take a long time. But WWP could have gone to federal court as early as 2008. In 2008, it moved the ALJ to stay the 2008 decision. And the ALJ denied its stay motion in December of 2008. And the Department of Interior Regulations 43 CFR 4.478B provide that any party other than BLM may seek judicial review of a final BLM grazing decision if the administrative law judge denies a petition for a stay. So they could have gone to federal court as early as 2008. How is that relevant? It's not. It doesn't change the redressability analysis. But in so far to Judge Ebell's point that it seems Kafkaesque that they were stuck in the administrative proceedings for 10 years. We just wanted the court to understand that there was an option for them to exit those and go to federal court. Two, in so far as WWP is raising some issues about the timing of the 2018 permits, we do acknowledge that things were some messy on the ground. There was some staffing turnover at BLM offices, potentially some lost files. But all permits were renewed in 2018. Even the ones that were not signed, BLM issued bills to all the permittees. All the bills were of the permits. And the BLM grazing handbook provides that if there's an unsigned permit, but the bill is paid, then it constitutes acceptance of the permit. And then, excuse me, WWP also raised a question about why are some of the renewal permits shorter than the others? Again, that's not really relevant. But we did just want to explain that the term of the grazing permits has to be the same as the length of any underlying leases at issue. And some of the permittees are leasing property near where they're grazing from. And so that's 43 CFR 4130.2 D3. It says that the length of the term shall be, shall correspond to the length of the underlying property. The WWP notes that in its reply brief that the renewal permits cite the environmental assessment that accompanied the 2008 permits. That fact does not create just disability. Congress in the FLTMA amendments said that the renewal permits must have the same terms and conditions as the 2008 permits. The environmental assessment is the document that defines in detail the pasture rotation and deferred grazing system that BLM put in place in 2008. For example, if the court looks at WWP appendix volume one at pages 178 to 180, that there are charts on those pages that outline the pasture, the season, the duration of use and the duration of rest periods. So those are the, that's the detailed explanation of the specific terms of the permit that the EPA has cited in the renewal permits. But what if the, what if the agency let the 2018 permits continue for 10 years and said, you know, we still don't have the resources. We're still overwhelmed by all this litigation, environmental litigation against this. Comes 2028, we haven't done anything. What happens then? Do they roll it over a third term with the promise that they'll do the EPA evaluation in the third term? Or is that the end of the game? Do things collapse at that point? So first, I would like to note that BLM is planning to do the NEPA before 2028. As everyone has noted, Congress instructed the Secretary of Interior to prioritize all of the allotments that reviews based on various factors, environmental significance and resource concerns. And it is planning to do the NEPA for these, for the Duck Creek allotment before 2028. So, WWPs. Let's say they might get it done in 2027. What does that mean though? By the time 2028 comes around, there's no time to challenge that. Under this system, you're just in a perpetual loop. So if, let's say BLM finishes the NEPA in 2027 and issues new permits then, then those permits would be in effect for 10 years. And WWP will have its day in court and will have an opportunity to challenge those new permits. These permits, in fact, canceled the prior permits that still had a year or two left on them. And BLM, excuse me, the 2008 permits, the previous permits had been issued in 2001 and didn't expire until 2011. And in 2008, when BLM issued the new permits, it said we're canceling the 2001 permits and these new permits will be in effect for 10 years. So if BLM issues new permits in 2027, those will be in effect for 10 years and WWP will have its day in court and will have an opportunity to challenge the NEPA analysis at that time. But possibly not for seven, eight years, is what you're saying. It is possible. I, you know. Is there anything that you can tell us other than we're going to do it in the next eight years or seven years? Is there anything more definitive? Is anything more definitive required of you? I would say two points. The first is the BLM, insofar as there's a concern of, well, BLM have any idea what's going on in the allotment? BLM is consistently monitoring the allotment. It does site visits every year before, during, and after grazing season. It does intensive studies every other year. The permittees have to submit reports. So BLM is monitoring conditions on the allotment and that's part of how it determines the prioritization for when it gets to the different allotments. If BLM were to take too long, let's say BLM, this isn't going to happen, but just for purposes of this conversation, say BLM just sits on its hands, never does any NEPA, WWP could bring suit against BLM for failure to act under the APA, Section 5 U.S.C. 7061. What standard would that be? I mean, failure to act under a rule or law, but there is no rule or law that requires them to act for 10 years. So if a court got that, we couldn't order the BLM to do something under a failure to act because the BLM would say, well, what standard are you holding us by? The statute doesn't give us a time frame. Unless you, the court, would like to write your own statute, you can't grant any relief. We may make some arguments to that effect. I will note that in a prior case in the District of Columbia, the District Court held an evidentiary hearing and said, I recognize that this is in your sole discretion, but I want to have a hearing. I want to understand how you're prioritizing these allotments, how you're making these decisions about when you're going to get to them and why this is taking so long. The only way to find that out, the only way for them to figure out or find out whether how BLM is prioritizing the allotments is to file an action saying that the BLM is delaying or it's not, what? I mean, this isn't a matter of public record how they're prioritizing, is it? Not to my knowledge, but BLM does consistently do community engagement meetings. It does meet with the public, including with WWP. Does it give the public timelines on this sort of thing? I don't know the answer to that. I also... Just trying to think. It sounds to me like it's totally at BLM's discretion and we would have no real ability to review something that lacks any guidelines, any anything at all. I mean, Congress did give BLM discretion, and I think it's important to understand here what was motivating Congress. Before 1997, BLM didn't do NEPA before it issued permit renewals. It did other types of analysis, but it didn't do NEPA. In 1997, the IBLA issued a decision requiring NEPA before permits could be issued, and at that point, BLM had this extraordinary backlog of thousands of permits, and so Congress tried issuing riders, and the backlog just kept increasing, and BLM never caught up. Congress recognized that we have permittees whose livelihoods depend on grazing, who've been grazing in their families since before BLM existed, since before NEPA existed, and Congress wanted to protect those permittees and give them some certainty. There's a lot of different interests here that Congress is trying to balance, but here Congress has spoken and said it wants to prioritize certainty for permittees. What about the possibility that relief could be granted by ultimately voiding the 2008 permit, which is, for all intents and purposes, the 2018 permit. If the 2018 permit is void and it's void ab initio, essentially, there isn't any, you don't pop into these 2014 amendments at all, do you? Is that one possibility for redress? I disagree for two reasons. First, I think it would be a functional end run around the 2014 amendments, because say the court were to say, look, we think the 2008 NEPA failed to analyze X issue. We're going to vacate it and remand. You would effectively be telling BLM, all right, now you need to do the NEPA now, because BLM can't go back in time and pretend that it's 13 years ago and update a 2008 NEPA document pretending that it's still 2008. It would have to do NEPA now. The court would effectively be doing a vacating the 2008 permits and saying, well, BLM would have to do NEPA now. I think that would be an end run around the 2014 amendments. That's the first point. Then second, chronologically, I think that there's a question. The 2014 amendments say that permits that have expired, the term shall be continued and the new permits shall remain in NEPA. Theoretically speaking or hypothetically speaking, if the court were to vacate the 2008 permits today, but the 2018 renewal permits are already existing, I would argue that the plain text of the statute says that they remain in effect until BLM completes new NEPA. Thank you. I see that I'm running low on time. I give the rest of my time to Utah. Thank you. May it please the court. My name is Mark Beauchelle, representing the city of Utah, intervenor, appellees in this matter. The National Defense Authorization Act passed in 2014 amended FLTMA, as we've discussed today, and it mandates that the terms and conditions on a grazing permit that has expired shall be continued under a new permit until BLM completes an environmental assessment as required under NEPA. I think a little legislative history is helpful here to provide some context. Quote, livestock grazing permit holders and public land agencies have been relying on appropriation bill riders affecting permit issuance for over a decade. Agencies cannot complete the needed National Environmental Policy Act obligations due to the backlog of lawsuits filed to delay permitting and to advance an environmental agenda of eliminating livestock grazing from public lands. In that context, I think it's important to know that some of the history on the allotment. In 2001, BLM issued a grazing decision, a final decision. In 2000, sorry, in 1999, they issued a final grazing decision. In 2001, they issued another record of decision, followed by a 2004 decision. And then finally, the 2008 final decision that we're discussing here today. There's a long history of environmental analysis on this allotment. And I think the court has to look at that to decide whether there is an appropriate remedy that the court can provide in this case. If the court does find that Western Watershed Project does have standing, and that there is a deficient NEPA analysis, the court could allow grazing to continue according to that 2008 decision. But that seems to be exactly what the law currently requires, that grazing continue until NEPA can be completed. Now the court could allow grazing to continue according to the most recent valid decision, which was from 2001. But this require grazing to happen according to a different grazing regime with different water infrastructure and could be environmentally damaging more so than that alleged by Western Watersheds. I think that creates some confusion. You're out of time. You could close it up, please. Sure. We just asked the court to affirm the district court's decision on standing as the remedy in this case is quite speculative and difficult to provide. Thank you. Thank you, counsel. I don't think you had any time left, did you, Mr. Lucas? Did you have any more? I did not have any time. Sorry. All right. Well, counsel, we very much appreciate your arguments. It's a difficult difficult case, and we appreciate your arguments. The case will be submitted and counsel are excused. Thank you.